IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01501-PAB

DEAN CARBAJAL,

Applicant,

v.

DEAN WILLIAMS, Executive Director of CDOC, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

---

## ORDER ON AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, Dean Carbajal, is a prisoner in the custody of the Colorado

Department of Corrections.   Mr. Carbajal has filed *pro se* on August 28, 2018 an

Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the

"Amended Application").   Docket No. 9.   Mr. Carbajal is challenging the validity of his

conviction and sentence in the District Court for the City and County of Denver,

Colorado, Case Number 10CR3824.   On May 17, 2019, Respondents filed an Answer

to Application for Writ of Habeas Corpus (the "Answer").   Docket No. 40.   On August

20, 2019, Mr. Carbajal filed Applicant Dean Carbajal's Traverse to State's Answer (the

"Traverse").   Docket No. 63.   On August 22, 2019, Mr. Carbajal filed a Motion for

Leave to Correct Petitioner's Traverse Via Errata Sheet, Docket No. 64, asking the

Court to consider additional exhibits he intended to submit with the Traverse.   That

motion will be granted.

After reviewing the record, including the Amended Application, the Answer, the

Traverse, and the state court record, the Court concludes Mr. Carbajal is not entitled to relief.

## I. BACKGROUND

The following background information is taken from the opinion of the Colorado Court of Appeals on direct appeal.

> The defendant, Dean Carbajal, and the victim dated for almost a year before they broke up in early 2010. Soon after the breakup, a court issued a protection order, prohibiting Carbajal from contacting the victim. Yet, Carbajal followed the victim for the next few months, showing up at her house and workplace. One night, Carbajal went to the victim's house and, according to her neighbors, was holding a knife, threatening to kill himself. The victim's neighbor called the police, who later found and arrested Carbajal.
>
> A jury found Carbajal guilty of five counts of protection order violation, five counts of violating bail bond conditions, two counts of burglary, two counts of criminal trespass, one count of kidnapping, and two counts of harassment by stalking.

Docket No. 21-5 at 2. Mr. Carbajal also was convicted on two habitual criminal counts and he was sentenced to a total term of 151.5 years in prison. The judgment of conviction was affirmed on direct appeal. *See id.*

Mr. Carbajal asserts five claims in the Amended Application. He contends in claim one that he was denied due process and that his rights under the Fourth, Fifth, and Fourteenth Amendments were violated because the Denver District Court lacked subject matter jurisdiction over his case. In claim two, he contends that admission of various out-of-court statements at trial violated his confrontation rights under the Sixth Amendment and the Colorado Constitution as well as his rights to due process and a

2

fair trial under the Fifth and Fourteenth Amendments.   In claim three, he contends he was denied due process and a fair trial in violation of the Fifth and Fourteenth Amendments because the trial judge was biased against him.   Mr. Carbajal contends in claim four that joinder of the charges and denial of a severance violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments.   Finally, he contends in claim five that denial of his motion to compel a psychological examination of the victim violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments.

## II.  STANDARDS OF REVIEW

The Court must construe the Amended Application and other papers filed by Mr. Carbajal liberally because he is not represented by an attorney.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant.   *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Carbajal bears the burden of proof under § 2254(d).   *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not come accompanied with those reasons" or "consist[s] of a one-word order, such as 'affirmed' or 'denied,' . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *See Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the

4

contrary." *Id.* at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Carbajal seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly

established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).

*See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the

state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted; alterations in original). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Carbajal bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete even if Mr. Carbajal demonstrates the existence of a constitutional violation. "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotation marks omitted); *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds

constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).   Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.   *Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."   *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).   "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."   *O'Neal*, 513 U.S. at 435.   The Court makes this harmless error determination based upon a review of the entire state court record.   *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.   MERITS OF APPLICANT'S CLAIMS

### A.   Claim One

Mr. Carbajal contends in claim one that he was denied due process and that his rights under the Fourth, Fifth, and Fourteenth Amendments were violated because the Denver District Court lacked subject matter jurisdiction over his case.   According to Mr. Carbajal, the judgment of conviction in 10CR3824 is void because charges were filed against him "in the County Court in a mode not prescribed by Colorado law" and he was

9

reprosecuted for the "identical charges in the District Court without a formal charging document." Docket No. 9 at 34. More specifically, Mr. Carbajal contends the Denver County Court and the Denver District Court failed to follow procedures set forth in Rules 5 and 7 of the Colorado Rules of Criminal Procedure for binding a case over from county court to district court. He also contends that five other county court cases (10M10759, 10CR3823, 10CR3825, 10CR3859, and 10CR3875) improperly were consolidated into case number 10CR3824. Mr. Carbajal argues that the failure to comply with state law implicates his federal constitutional right to due process because "the abusive and oppressive prosecution against Mr. Carbajal rises to the level of a fundamental defect which inherently has resulted in a complete miscarriage of justice, which is inconsistent with the rudimentary demands of fair process." Docket No. 9 at 53-54.

The Colorado Court of Appeals reasoned as follows in rejecting Mr. Carbajal's jurisdiction claim on direct appeal:

> Carbajal contends that the underlying judgment is "void for want of a valid information." He seems to argue that the prosecution filed charges in county court, which improperly transferred venue and joined the charges into one case in the district court – all without dismissing the charges in the county court or filing a valid information in the district court.
>
> We conclude the district court had jurisdiction over the case, and the prosecution properly consolidated the case. We reach this conclusion for several reasons. First, the district court acquired jurisdiction after the county court bound the case over to the district court. *People v. Gardner*, 250 P.3d 1262, 1270-71 (Colo. App. 2010) (holding that county courts have the power to bind felony cases over

to the district courts). When a county court binds a case over to the district court, the entire record is transferred. Crim. P. 5(a)(4)(III). And the felony complaint, when transferred with the record, "shall be deemed to be an information if it contains the requirements of an information." Crim. P. 7(b)(4). The felony complaint in this case contains such requirements. *See* Crim. P. 7(b)(2).

Second, the prosecution properly moved to consolidate the cases. After the county court bound the case over, the prosecution moved to amend the complaint and information to include all of the counts in one case; the district court granted this motion.

To the extent that Carbajal contends that jurisdiction was improper because bail was set in the county court, we reject this contention. *See* Crim. P. 5(a)(4)(III) ("[The county court] shall order the defendant bound over to the appropriate court of record for trial. In appropriate cases, the defendant may be . . . continued on bail by the county court . . . .").

Docket No. 21-5 at 22-23.

Mr. Carbajal is not entitled to relief with respect to claim one because the claim challenges the state court's determination of jurisdiction under state law and the state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Although Mr. Carbajal strongly disagrees with the state court's interpretation of the relevant state law rules of criminal procedure, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long

recognized that 'a mere error of state law' is not a denial of due process."). Thus, in *Lambert v. Workman*, 594 F.3d 1260 (10th Cir. 2010), the United States Court of Appeals for the Tenth Circuit rejected a habeas corpus applicant's claim challenging the state court's jurisdiction to abrogate a felony conviction. Relying in part on the Supreme Court's decision in *Estelle v. McGuire*, the Tenth Circuit reasoned that "[t]he OCCA's understanding of its own authority in the state appellate process is a matter of state law and, as such, generally beyond the purview of federal habeas review." *Id.* at 1264.

Mr. Carbajal attempts to distinguish *Lambert* because that case dealt with appellate jurisdiction, but the relevant principle regarding state court jurisdiction is applicable to all state courts. In addressing a challenge similar to the claim Mr. Carbajal is asserting, the Tenth Circuit noted "[i]t is well settled that the sufficiency of an indictment or information in a state court is a matter for the court of the state to determine. Their determination is final and in the absence of a denial of equal protection of the laws, it will not be reviewed by the courts of the United States." *Cole v. Van Horn*, 67 F.2d 735, 736 (10th Cir. 1933).

Despite this clear authority prohibiting federal habeas corpus review of the jurisdiction claim, Mr. Carbajal contends the state court's failure to comply with state rules of criminal procedure in his case was so egregious that it rises to the level of a fundamental defect or structural error in violation of due process. It is true that "the United States Supreme Court has suggested that, in rare circumstances, a determination of state law can be 'so arbitrary or capricious as to constitute an

independent due process . . . violation.'" *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).   However, Mr. Carbajal's factual allegations regarding the commencement of case number 10CR3824 and his conclusory assertions regarding a fundamental defect or structural error do not persuade the Court that this is the rare case in which due process has been violated. Furthermore, the Supreme Court's "suggestion" regarding the existence of an independent due process violation in rare circumstances is not clearly established federal law for the purposes of the Court's review under § 2254(d)(1).   *See House*, 527 F.3d at 1016.   Mr. Carbajal also fails to demonstrate the state court's decision regarding jurisdiction was based on an unreasonable determination of the facts under § 2254(d)(2).

For these reasons, Mr. Carbajal is not entitled to relief with respect to claim one.

### B. Claim Two

Mr. Carbajal contends in claim two that admission of various out-of-court statements violated his confrontation rights under the Sixth Amendment and the Colorado Constitution as well as his rights to due process and a fair trial under the Fifth and Fourteenth Amendments.   Claim two lacks merit to the extent the claim is premised on an alleged violation of the Colorado Constitution because, as noted above, relief under § 2254 is not available for violations of state law.   *See Estelle*, 502 U.S. at 67-68.

Mr. Carbajal specifically argues in claim two that, despite his repeated objections, the trial court improperly admitted statements made by the victim, as well as

13

descriptions of the victim's actions and demeanor, through the testimony of other witnesses.   The victim did not testify at trial.   Mr. Carbajal further argues in claim two that the entire case against him hinged on these out-of-court statements and that the prosecution emphasized the victim's out-of-court statements in their opening statement and closing argument.   The specific testimony and statements on which claim two is premised are the following:

● Anna Banales' testimony that she heard screams ("Ana" and "Help me") and someone crying, and that she heard the victim say "He's going – someone's going to get killed."

● Irma Holguin's testimony that the victim was upset about her missing dog and that the victim told her Mr. Carbajal broke the window at her residence.

● Vickie Baylon-Rawlins' testimony that the victim stated "He's going to kill himself.   I thought he was going to kill me," and that the victim was screaming and crying.

● Detective Larry Black's testimony that the victim had received multiple telephone calls from Mr. Carbajal and that Mr. Carbajal knew the victim was in a hotel with an investigator.

● Investigator Richard Harris' testimony that Mr. Carbajal told the victim who she was with in the hotel as well as her reaction to that information.

● Investigator Jeff Watts' testimony that the victim was frantic, hysterical, and crying during a telephone call on August 26 and stated that Mr. Carbajal had broken in with a knife and threatened to kill himself; and that there was a bloody tissue used by

Mr. Carbajal that was not collected by responding officers because the victim knew who the perpetrator was.

      ● Detective Michael Reifsteck's testimony about the victim's statements concerning a burglary, that Mr. Carbajal may have been responsible, and that he was subject to an active restraining order.

      The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

      In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), the United States Supreme Court held that the Confrontation Clause bars the introduction into evidence of out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. However, the Confrontation Clause has no application to out-of-court statements that are not testimonial. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007). A statement is testimonial if the statement has a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

      The Colorado Court of Appeals addressed the federal Confrontation Clause

claim on direct appeal and concluded the trial court properly admitted testimony relating the victim's out-of-court statements and describing her actions. The state court initially determined the challenged statements were not hearsay under Colorado law, finding that testimony regarding the victim screaming, crying, and uttering commands were not "statements" and that the actual statements in question were not offered to prove the truth of the matter asserted. *See* Docket No. 21-5 at 9-16. The state court then determined Mr. Carbajal's federal constitutional rights were not violated because the Confrontation Clause is not violated by admission of non-hearsay statements. *See id.* Although the specific testimony to which Mr. Carbajal objects in the Amended Application includes testimony not specifically addressed by the Colorado Court of Appeals, apparently because Mr. Carbajal challenges more testimony in the Amended Application than he did in his opening brief on direct appeal, the additional testimony in question also was admitted at trial because it was not hearsay.

It does not appear that Mr. Carbajal is challenging the state court's rejection of his Confrontation Clause claim under § 2254(d)(2). In any event, the Court finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

Mr. Carbajal also fails to demonstrate the state court's rejection of his Confrontation Clause claim is contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1). In fact, the state court's decision is entirely consistent with clearly established federal law because, even if the Court assumes some of the statements to which Mr. Carbajal objects were "testimonial," the

Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. To the extent Mr. Carbajal argues the state court erred in concluding the statements in question were not hearsay under Colorado law and were admitted for purposes other than establishing the truth of the matter asserted, the argument lacks merit because the Court cannot review that state law determination. *See Estelle*, 502 U.S. at 67-68. In light of that state-law determination, Mr. Carbajal fails to demonstrate the state court ruling on the constitutional question "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As a result, Mr. Carbajal is not entitled to relief with respect to his Confrontation Clause argument in claim two.

Finally, Mr. Carbajal also contends in claim two that admission of the victim's out-of-court statements violated his federal constitutional right to due process. In particular, he contends that presentation of the victim's out-of-court statements was unfair because the prosecution prevented the victim from testifying, which allegedly prevented Mr. Carbajal from presenting an entrapment and actual innocence defense.

The Court reiterates that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle*, 502 U.S. at 67-68, and "that 'a mere error of state law' is not a denial of due process." *Engle*, 456 U.S. at 121 n.21. Thus, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000).

17

A proceeding is fundamentally unfair so as to deprive the defendant of due process of law if it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation marks omitted). Stated another way, introduction of evidence fails the due process test of "fundamental fairness" if the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted). As these tests demonstrate, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

The Colorado Court of Appeals did not explicitly address the due process component of claim two. However, as noted above, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (an adjudication on the merits "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness*

of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). The parties do not argue that the due process component of claim two was not fairly presented to the state courts and there is no showing to overcome the presumption that the state court adjudicated the claim on the merits. Therefore, the Court considers the due process component of claim two under the deferential standards in § 2254(d).

Mr. Carbajal fails to demonstrate that the decision of the Colorado Court of Appeals regarding the due process component of claim two is either contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Based on the Court's review of the entire proceedings, the Court cannot conclude that admission of the victim's out-of-court statements and descriptions of her actions and demeanor rendered Mr. Carbajal's trial fundamentally unfair. As a result, the Court finds that Mr. Carbajal also is not entitled to relief with respect to the due process component of claim two.

### C. Claim Three

Mr. Carbajal contends in claim three that he was denied due process and a fair

trial in violation of the Fifth and Fourteenth Amendments because the trial judge was

biased against him.   He asserts in support of claim three that he filed his first motion to

recuse prior to trial on January 24, 2011, alleging the trial judge had repeatedly attacked

and demeaned him in front of the jury in a separate criminal case in December 2010.

He asserts that he filed a second motion to recuse after trial in case number 18CR3824

because the trial judge exhibited bias against him during trial by engaging in a pattern of

ex parte communications, yelling at him, interfering with his presentation of the defense,

allowing the prosecution to present inadmissible evidence, and allowing the prosecution

to proceed with various charges that were not supported by the evidence.   The second

motion to recuse and a supplement to the motion were filed on February 6, 2012, and

denied the same day.   *See* Docket No. 21-1 at 28.

Mr. Carbajal raised the judicial bias claim on direct appeal.   His arguments in

"Appellant's Opening Brief" filed by counsel, Docket No. 21-2, and in his *pro se* reply

brief captioned "Mr. Carbajal's Amended Reply Br[ie]f," Docket No. 21-4, were premised

solely on the denials of the motions to recuse filed on January 24, 2011 and February 6,

2012.   The Colorado Court of Appeals relied on state law to conclude the trial court did

not improperly deny the motions to recuse.   In particular, the state court reasoned as

follows:

> We conclude the court did not improperly deny
> Carbajal's motions to recuse for several reasons.   First,
> Carbajal did not file the two required affidavits with his first
> motion to recuse.   § 16-6-201(3).
>
> Second, he did not file the first motion within fourteen
> days of the case being assigned to the court or show good

cause for filing later.   Crim. P. 21(b)(1).   Indeed, the court
held a hearing to address the motion and recorded in the
minute orders that it denied the motion as untimely.

Third, because Carbajal did not provide a transcript
from this hearing, we presume the transcript supports the
trial court's ruling.   *People v. Portillo*, 251 P.3d 483, 484
(Colo. App. 2010).

Fourth, to the extent that Carbajal contends the court
improperly denied his second motion to recuse, we conclude
that it was untimely.   He filed it after the trial was complete
and did not show good cause for the late filing.   *See* Crim.
P. 21(b)(1).

Docket No. 21-5 at 17.

Respondents argue the judicial bias claim is procedurally barred because the

Colorado Court of Appeals rejected the claim on independent and adequate state

grounds.   Respondents previously raised the same argument in their Pre-Answer

Response, Docket No. 21, but the Court was unable to resolve the issue at that time.

Now, after reviewing the entire state court record, it is clear that the judicial bias claim

Mr. Carbajal presents as claim three in the Amended Application is the same claim he

raised on direct appeal and is procedurally barred.

Federal courts "do not review issues that have been defaulted in state court on

an independent and adequate state procedural ground, unless the default is excused

through a showing of cause and actual prejudice or a fundamental miscarriage of

justice."   *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).   Application of this

procedural default rule in the habeas corpus context is based on comity and federalism

concerns.   *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural ground is adequate if it "was firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (internal quotation marks omitted).

As demonstrated in the excerpt above, the Colorado Court of Appeals relied on various state law rules in rejecting Mr. Carbajal's judicial bias claim. First, the state court determined Mr. Carbajal failed to file the necessary affidavits that must accompany a motion to disqualify a judge. *See* Colo. Rev Stat. § 16-6-201(3); Colo. R. Crim. P. 21(b); *People v. Grenemyer*, 827 P.2d 603, 605 (Colo. App. 1992). The state court also determined Mr. Carbajal failed to file the motions in a timely manner or to show good cause for the late filing. *See* Colo. R. Crim. P. 21(b); *People v. District Court*, 560 P.2d 828, 830-31 (Colo. 1977). Finally, the state court determined Mr. Carbajal failed to provide a transcript of the relevant hearing on the first motion, which meant the state court must presume the record supports the trial court's conclusions. *See People v. Portillo*, 251 P.3d 483, 484 (Colo. App. 2010).

Mr. Carbajal bears the burden of demonstrating the rules identified by the Colorado Court of Appeals are not independent and adequate state procedural rules. *See Fairchild v. Workman*, 579 F.3d 1134, 1143 (10th Cir. 2009). He fails to do so. Instead, he takes issue with the state court's determination that he filed to comply with the procedural rules. However, the Court does not review a state court's determination of a state law question. *See Estelle*, 502 U.S. at 67-68. Therefore, claim three is

22

procedurally defaulted and cannot be considered unless Mr. Carbajal demonstrates cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the Court does not review the claim.   *See Jackson*, 143 F.3d at 1317.

To demonstrate cause for his procedural default Mr. Carbajal must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule.   *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).   "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]."   *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted).   If Mr. Carbajal can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law."   *Coleman*, 501 U.S. at 750.   A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Murray*, 477 U.S. at 496.   Mr. Carbajal's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice to overcome a procedural default.   *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Mr. Carbajal contends that, if claim three is procedurally defaulted, he can demonstrate cause for the default because the state courts interfered with his ability to pursue his claims on direct appeal by refusing to grant him access to the appellate record and denying him leave to amend his opening brief when he opted to represent himself after counsel attempted to sabotage his appeal.   This argument lacks merit

because, other than the failure to provide a transcript, the procedural defaults relevant to the motions to recuse occurred prior to the appeal. As a result, the problems that allegedly interfered with his ability to prosecute his direct appeal did not cause the other procedural defaults identified by the Colorado Court of Appeals.

Mr. Carbajal also argues that a fundamental miscarriage of justice will occur if the Court does not consider the merits of claim three because he is actually innocent. The Court is not persuaded. A credible claim of actual innocence requires Mr. Carbajal "to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Mr. Carbajal then "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). "The *Schlup* standard is demanding and permits review only in the extraordinary case." *Id.* at 538 (internal quotation marks omitted).

Mr. Carbajal fails to present any new evidence to support an actual innocence argument. His conclusory allegations that the victim lied repeatedly and that the Denver Police Department falsified charges to cover-up their use of excessive force are not new evidence and do not satisfy the *Schlup* standard. Therefore, claim three is procedurally barred.

### D. Claim Four

Claim four is a due process claim challenging joinder of the charges and denial of

a severance.    According to Mr. Carbajal, he

> was unfairly convicted in a mode contrary to the United
> States Constitution's due process clause set forth in the 14th
> Amendment, through the improper joinder of numerous
> charges, that in fairness should have been severed due to
> obvious prejudicial effect of having to try those charges
> jointly.    Indeed, the complexity of these charges and
> defenses that applied to the various instances were such,
> that it was impossible to afford Mr. Carbajal a fair trial,
> especially given the need to testify regarding some instances
> and not others, and the numerous defenses that were
> antagonistic.    In fact, three of the abusively joindered
> burglaries charged were dismissed or resulted in acquittal,
> due to the complete lack of evidence; thus, giving rise to a
> retroactive misjoinder.

Docket No. 9 at 112-13.

The Colorado Court of Appeals reasoned as follows in rejecting Mr. Carbajal's

claim that improper joinder of the charges denied him a fair trial:

> Multiple counts or offenses may be joined in one trial
> if they are based on a series of acts arising from the same
> criminal episode. Crim. P. 8(a).

> The trial court has the discretion to sever or join the
> counts. *People v. Aalbu*, 696 P.2d 796, 806 (Colo. 1985).
> When a court decides to join counts in one trial, it only
> abuses its discretion if the defendant shows that the joinder
> actually prejudices him.    *Id.*; *People v. Bondsteel*, 2015
> COA 165, ¶ 33 ("[A] defendant must first show actual
> prejudice, not just that 'separate trials might afford the
> defendant a better chance of acquittal.'") (citation omitted).

> At a motions hearing, Carbajal primarily asserted that
> joining the offenses would cause the jury to convict on some
> counts based on the overall evidence rather than the
> evidence for a particular count.    He conceded that "some of
> the incidents have some common basis, and some common
> scheme."    Throughout his argument to the trial court, he did
> not cite to legal authority.    The trial court denied the motion

at the hearing and again when Carbajal raised it at trial. It
noted that "evidence is often prejudicial, or it would not be
relevant . . . ." And it ultimately found that, "given this is a
single criminal episode," any prejudice is "minor."

We conclude the court did not abuse its discretion
because Carbajal did not show how a single trial on all of the
issues would be unduly prejudicial. *See Aalbu*, 696 P.2d at
805 (stating that joinder is permitted if the crimes were
committed "at different times and places but constitut[e] part
of a schematic whole").

Docket No. 21-5 at 18-19 (alterations in original).

Mr. Carbajal contends, and Respondents do not dispute, that claim four was
raised on direct appeal as a federal constitutional claim. Furthermore, there is no
indication that the Colorado Court of Appeals did not adjudicate the merits of the
misjoinder claim. Therefore, the Court reviews claim four under the deferential
standards of § 2254(d).

To the extent Mr. Carbajal's misjoinder claim is premised on an asserted violation
of Colorado state law, the claim lacks merit because he is not entitled to relief pursuant
to § 2254 unless he can demonstrate a violation of his federal constitutional rights.
*See Estelle*, 502 U.S. at 67-68.

With respect to the federal constitutional argument in claim four, Mr. Carbajal is
not entitled to relief under § 2254(d)(1) because there is no clearly established federal
law holding that improper joinder of charges violates the United States Constitution. In
*United States v. Lane*, 474 U.S. 438, 446 n.8 (1986), the Supreme Court noted in a
footnote that "misjoinder would rise to the level of a constitutional violation only if it
results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair

trial." However, the footnote in *Lane* regarding misjoinder is dicta. *See Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). As noted above, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process." *Collins v. Uribe*, 564 F. App'x 343, 343 (9th Cir. 2014). As a result, any argument that the decision of the Colorado Court of Appeals is contrary to or an unreasonable application of clearly established federal law necessarily fails. *See House*, 527 F.3d at 1018 (noting that the absence of clearly established federal law ends the Court's inquiry pursuant to § 2254(d)(1)).

In any event, even if the Court could review claim four using a fundamental fairness standard, *see Lucero v. Kerby*, 133 F.3d 1299, 1313-14 (10th Cir. 1998) (applying fundamental fairness standard to misjoinder claim on habeas review), the Court cannot conclude that the joinder of offenses rendered Mr. Carbajal's trial fundamentally unfair in violation of due process. Based on the Court's review of the entire state court record, the Court is not persuaded that joinder of the charges at Mr. Carbajal's trial resulted in a proceeding that is "shocking to the universal sense of justice." *Russell*, 411 U.S. at 432 (internal quotation marks omitted).

Finally, the Court concludes that the state court's rejection of claim four was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court determined

27

the charges properly were joined in a single trial because all of the charges arose from a single criminal episode. That factual determination regarding a single criminal episode is presumed correct and Mr. Carbajal bears the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Based on the Court's review of the state court record, it is readily apparent that the state court's factual determination is reasonable because all of the charges arose from Mr. Carbajal's continued stalking of a single victim over a period of a few months. Therefore, Mr. Carbajal is not entitled to relief under § 2254(d)(2) with respect to claim four.

### E. Claim Five

Mr. Carbajal contends in claim five that his rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated when the trial court denied his motion to compel a psychological examination of the victim. According to Mr. Carbajal, denial of the motion resulted in a deprivation "of his constitutional right to material evidence concerning [the victim's] mental condition and severe brain injuries, that would have assisted Mr. Carbajal to properly impeach [the victim], and illustrate the basis for her repeated false statements and delusional account of events." Docket No. 9 at 130. He maintains that the evidence he sought was critical "because the Prosecution's entire case was built on [the victim's] statements and actions with law enforcement, that would have been entirely discredited based on evidence of her mental and physical condition that caused her to fabricate stories, and enhanced her propensity for fraud." *Id.* at 137.

"Whether rooted directly in the Due Process Clause of the Fourteenth

Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth

Amendment, the Constitution guarantees criminal defendants a meaningful opportunity

to present a complete defense."   *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)

(citations and internal quotation marks omitted).   Of course,

> [w]hile the Constitution thus prohibits the exclusion of
> defense evidence under rules that serve no legitimate
> purpose or that are disproportionate to the ends that they are
> asserted to promote, well-established rules of evidence
> permit trial judges to exclude evidence if its probative value
> is outweighed by certain other factors such as unfair
> prejudice, confusion of the issues, or potential to mislead the
> jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also Crane*, 476 U.S. at 689-

90 (stating that "the Constitution leaves to the judges who must make these decisions

'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or

poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'").

Ultimately, "to establish a violation of the right to compulsory process, a fair trial

or due process, a defendant must show a denial of fundamental fairness."   *Richmond*

*v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).   In determining whether Mr. Carbajal can

demonstrate a denial of fundamental fairness in the specific context of his claim that his

constitutional right to present a complete defense was violated, the Court

> first examine[s] whether that testimony was relevant, and if
> so, whether the state's interests in excluding the evidence
> outweighed Mr. [Carbajal's] interests in its admittance.   This
> inquiry includes an examination as to whether more
> traditional factors such as prejudice, issue and jury confusion
> weigh in favor of excluding the testimony.   Second, [the

Court] examine[s] whether the excluded testimony was material – whether it was of such an exculpatory nature that its exclusion affected the trial's outcome.

*Id.*

The Colorado Court of Appeals rejected Mr. Carbajal's claim challenging the trial court's denial of his motion to compel a psychological examination of the victim.   The state court explained its reasoning as follows:

Carbajal filed a motion to compel a physical and psychological examination of the victim.   In his motion, Carbajal alleged the following:

● The victim was in a motorcycle accident two years earlier, and she "*may* be suffering from potential TBI (Traumatic Brain Injury) in addition to other psychological disorders."   (Emphasis added.)

● The victim "attempted to commit suicide three times" while dating Carbajal.

● The victim has "delusional spells."

● The victim has "lied throughout the investigation."

● An involuntary examination is necessary because "there is medical and mental health evidence that will support or establish a link between [the victim's] propensity to lie, [and] to a physical condition or psychological disorder."

The court denied the motion, finding that Carbajal did not demonstrate a compelling need.

Carbajal moved for an involuntary examination because he contends an examination would show that the motorcycle accident caused erratic and delusional behavior, memory loss, and the victim's propensity to lie.

> But Carbajal's motion was based only on speculation that
> the victim "may" have suffered from a disorder to which he
> hoped to attribute the victim's behavior.   The motion did not
> show that an examination would produce material evidence.
> *See Chard*, 808 P.2d at 353.

Docket No. 21-5 at 20-21 (alterations in original).

The Colorado Court of Appeals did not explicitly address claim five as a federal constitutional claim.   However, the Court reiterates that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   *Richter*, 562 U.S. at 99; *see also Early*, 537 U.S. at 8 (an adjudication on the merits "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").   Therefore, the Court considers the state court's rejection of claim five under the deferential standards in § 2254(d).

Mr. Carbajal is not entitled to relief on claim five under the "contrary to" clause of § 2254(d)(1).   Although he contends the trial court applied the wrong legal standard in denying his motion, he does not contend the Colorado Court of Appeals applied the wrong standard on appeal and the Court reviews "the last related state-court decision that does provide a relevant rationale."   *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).   Mr. Carbajal also does not identify any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.

In addition, Mr. Carbajal fails to demonstrate the state court's ruling on claim five was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The Colorado Court of Appeals determined that Mr. Carbajal failed to allege facts that demonstrate an examination of the victim would produce material evidence. Mr. Carbajal does not provide clear and convincing evidence to rebut the presumption of correctness that attaches to this factual finding. *See* 28 U.S.C. § 2254(e)(1). In fact, he still fails to demonstrate the evidence he sought was anything more than speculative because he argues in the Amended Application only that the victim's "psychological disorders and medical issues *may* have played a key role in the fabrication of these charges" and that "a psychological evaluation would have allowed a medical expert to determine *whether* [the victim] was indeed suffering from a brain injury, which caused her to fabricate or err in her recollection of the events leading to the charges in this matter." Docket No. 9 at 135 (emphasis added). The Court notes that Mr. Carbajal also fails to demonstrate the victim's assertions to law enforcement were false or contrary to the evidence presented at his trial.

Finally, Mr. Carbajal fails to demonstrate the state court's ruling on claim five was an unreasonable application of clearly established federal law under § 2254(d)(1). In light of the factual determination that the request to compel a psychological examination was based only on speculation that the victim "may" have suffered from a disorder, it was reasonable to conclude that Mr. Carbajal cannot demonstrate his trial was fundamentally unfair. Furthermore, the victim did not testify at trial and her credibility

was not a significant issue.   Instead, all of the offenses were proven beyond a reasonable doubt through testimony from witnesses other than the victim.   As a result, the Court is not persuaded that the evidence Mr. Carbajal sought to present, even assuming it existed, "was of such an exculpatory nature that its exclusion affected the trial's outcome."   *Richmond*, 122 F.3d at 872.

Ultimately, Mr. Carbajal is not entitled to relief with respect to claim five because he fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Carbajal is not entitled to relief. Accordingly, it is

**ORDERED** that the Motion for Leave to Correct Petitioner's Traverse Via Errata Sheet, Docket No. 64, is granted.   It is further

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 9, is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED October 8, 2019.

BY THE COURT:

 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
Chief United States District Judge